## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

_____

| | )<br>) |
|---|---|
| **JUDITH M. HAYES AND THOMAS F.**<br>**HAYES,** | )<br>)<br>) |
| **Plaintiffs,** | )<br>)<br>) |
| **v.** | )<br>)<br>)   **Civil Action No. 13-cv-12014-DJC** |
| **CRGE FOXBOROUGH, LLC d/b/a TOBY**<br>**KEITH'S I LOVE THIS BAR & GRILL,** | )<br>)<br>) |
| **Defendant/Third-Party Plaintiff,** | )<br>) |
| **v.** | )<br>)<br>) |
| **LINDSAY LAMPASONA, LLC,**<br>**STERLING CONSTRUCTION**<br>**SERVICES, LLC, and**<br>**BALDINGER ARCHITECTURAL STUDIO,**<br>**INC.,** | )<br>)<br>)<br>)<br>)<br>) |
| **Third-Party Defendants.** | )<br>)<br>) |

_____)

## MEMORANDUM AND ORDER

**CASPER, J.**                                                                 **March 8, 2016**

## I.      Introduction

Plaintiff Judith M. Hayes ("Hayes") has filed this lawsuit against CRGE Foxborough, LLC ("CRGE") alleging negligence, strict liability under Mass. Gen. L. c. 143 § 51 and violation of Mass. Gen. L. c. 93A related to Hayes' alleged fall at Toby Keith's I Love This Bar and Grill ("Toby Keith's").[1]   D. 1.   CRGE has in turn sued Baldinger Architectural Studio, Inc.

_____

[1]  Thomas F. Hayes also claims loss of consortium resulting from his wife's injuries.  Because

("Baldinger") for breach of contract and contribution; Sterling Construction Services, LLC

("Sterling") for breach of contract and contribution; and Lindsay Lampasona, LLC

("Lampasona") for contribution. D. 11. Baldinger filed a cross claim against Sterling for

contractual indemnification. D. 74. Now before the Court are several motions. Hayes has

moved for entry of default judgment against CRGE, D. 111, and for authority to attach CRGE's

property in the amount of one million dollars. D. 150. CRGE moves to amend its third party

complaint. D. 133. Sterling moves for summary judgment on CRGE's claim against Sterling.

D. 119. In its summary judgment motions, Baldinger asks the Court to dismiss CRGE's claims

against Baldinger, D. 120, and award relief on Baldinger's claim against Sterling. D. 125. For

the reasons stated below, the Court DENIES Hayes' motion for entry of default judgment,

DENIES Hayes' motion to attach, ALLOWS in part and DENIES in part CRGE's motion to

amend its complaint, DENIES Sterling's motion for summary judgment and ALLOWS in part

and DENIES in part Baldinger's motions for summary judgment.

## II.    Standard of Review

Summary judgment is appropriate where there is no genuine dispute as to any material

fact and the undisputed facts demonstrate that the moving party is entitled to judgment as a

matter of law. Fed. R. Civ. P. 56(a). A material fact "carries with it the potential to affect the

outcome of the suit under the applicable law." Santiago–Ramos v. Centennial P.R. Wireless

Corp., 217 F.3d 46, 52 (1st Cir. 2000) (internal quotation mark omitted) (quoting Sánchez v.

Alvarado, 101 F.3d 223, 227 (1st Cir. 1996)). "[The] party moving for summary judgment bears

the burden of demonstrating the absence of a genuine issue of material fact." Carmona v.

Toledo, 215 F.3d 124, 132 (1st Cir. 2000); see Celotex Corp. v. Catrett, 477 U.S. 317, 323

his claim is entirely dependent on the viability of his wife's claims the Court refers to Thomas
and Judith Hayes as a single plaintiff for ease of reference. See Papadopoulos v. Target Corp.,
457 Mass. 368, 369 n.4 (2010).

(1986).  Where the moving party has met its burden, the non-moving party may not rest upon the allegations or denials in her pleadings, <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 256 (1986), but "must, with respect to each issue on which she would bear the burden of proof at trial, demonstrate that a trier of fact could reasonably resolve that issue in her favor." <u>Borges ex rel. S.M.B.W. v. Serrano–Isern</u>, 605 F.3d 1, 5 (1st Cir. 2010) (internal citations omitted).  "As a general rule, that requires the production of evidence that is 'significant[ly] probative.'" <u>Id.</u> (alteration in original) (quoting <u>Anderson</u>, 477 U.S. at 249).  In this analysis, the Court "view[s] the record in the light most favorable to the nonmovant, drawing reasonable inferences in his favor." <u>Noonan v. Staples, Inc.</u>, 556 F.3d 20, 25 (1st Cir. 2009).

## III.    Factual Background

Unless otherwise noted, the following facts are undisputed and drawn from Baldinger and CRGE's Joint Statement of Material Facts, D. 151, and Sterling's responses to Baldinger's Statement of Facts.  D. 139.  On Saturday, March 31, 2012, Hayes met four friends – John Williams ("Williams"), Jean D'Amato, Richard D'Amato and Donna Williams – for dinner at Toby Keith's in Foxborough.  D. 139 ¶ 1; D. 151 ¶ 1.  As the group was eating, the lights were turned down for the live entertainment of a band.  D. 139 ¶ 2; D. 151 ¶ 2.  At approximately 9:30 p.m., the group sought to exit the restaurant and proceeded to the staircase near their table.  D. 139 ¶ 3; D. 151 ¶ 3.  Hayes testified that the stairs were crowded with patrons.  D. 139 ¶ 4; D. 151 ¶ 4.  Although the parties contest the manner in which Hayes fell, it is undisputed that she fell on the stairs.  D. 139 ¶ 5; D. 151 ¶ 5.  Hayes alleges that when she fell on the stairs, she fractured her hip.  D. 151 ¶ 5.  Hayes alleges that the stairs were "unsafe" and the lights near the stairs did not meet the minimum level of illumination, both in violation of the Massachusetts

State Building Code.  Id. ¶¶ 6-7.  Hayes further alleges that the defect in the stairs and the low lighting caused her fall.  Id.

CRGE is the owner and operator of Toby Keith's.  D. 1 ¶ 18; D. 7 ¶ 18.  The process of building Toby Keith's occurred during or around 2010.  D. 139 ¶ 9; D. 151 ¶ 8.  Each of the three third-party defendants served a distinct role in that construction process.  According to CRGE, there was a management agreement between CRGE and Capri Concepts, LLC ("Capri")[2] pursuant to which Capri acted on behalf of CRGE as the construction manager for the building of Toby Keith's.[3]  D. 151 ¶ 29.  It is undisputed that Capri entered into contracts with Sterling and Baldinger related to the construction of Toby Keith's.  Pursuant to a contract between Capri and Baldinger, Baldinger provided architectural design services for the construction of Toby Keith's. D. 151 ¶¶ 8, 28.  Pursuant to a contract between Sterling and Capri, Sterling served, at least for a period, as the general contractor for the construction of Toby Keith's. D. 139 ¶ 13; D. 151 ¶¶ 9, 28.  Sterling, in turn, contracted with Lampasona pursuant to which Lampasona served as the subcontractor responsible for constructing the stairs where Hayes' accident took place.  D. 139 ¶ 15; D. 151 ¶ 10.

## IV.    Procedural History

Hayes instituted this action on August 21, 2013.  D. 1.  She asserted negligence, strict liability and Mass. Gen. L. c. 93A claims against CRGE.  Id.  On October 17, 2013, CRGE filed a third party complaint asserting claims against Lampasona, Baldinger and Sterling.  D. 11.  On

---

[2]  Capri no longer exists and is not named in this lawsuit.  D. 151 ¶ 41; D. 134-1 at 6.

[3]  Baldinger contests this assertion on the grounds that CRGE has not produced a copy of the alleged management contract.  D. 151 ¶ 29.  CRGE responds that it does not have a copy of the management contract because the contract was lost by prior counsel before the commencement of this suit.  Id. ¶ 30.

November 26, 2014, Sterling filed a cross claim against Lampasona.  D. 73.  That same day, Baldinger filed a cross claim against Sterling.  D. 74.

Hayes moves for an entry of default judgment against CRGE, D. 111, and to attach CRGE's property in the amount of one million dollars.  D. 150.  CRGE seeks to amend its third party complaint.  D. 133.  Sterling moves for summary judgment on CRGE's breach of contract claim against Sterling (Count III of CRGE's third party complaint).  D. 119.  In its summary judgment motions, Baldinger asks the Court to dismiss CRGE's contribution claim (Count IV of CRGE's third party complaint) and breach of contract claim against it (Count V of CRGE's third party complaint).  D. 120.  Baldinger also asks the Court to award relief on Baldinger's claim against Sterling for contractual indemnification (Count I of Baldinger's cross claim).  D. 125. The Court heard the parties on the pending motions and took these matters under advisement.

## V.     Discussion

### A.     Hayes' Request for Default Judgment Is Denied

Hayes seeks default judgment against CRGE based upon CRGE's failure to comply with the Court's June 18, 2015 order.  D. 111.  In seeking a default judgment against CRGE, Hayes attempts to rely upon Fed. R. Civ. P. 55(b)(2)(B).  This rule, however, governs when the Court has already determined that the entry of default is warranted.  See AngioDynamics, Inc. v. Biolitec AG, 780 F.3d 429, 436 (1st Cir.) cert. denied, 136 S. Ct. 535 (2015) (invoking Rule 55(b) to determine whether the court had properly awarded damages only after separately determining that default was appropriate).  Hayes' request for default judgment is more appropriately assessed under Fed. R. Civ. P. 16(f)(1)(C).[4]  Rule 16(f) grants courts the authority

---

[4]  To the extent that Hayes intended to imply that CRGE's violation of the Court's June 18, 2015 order automatically constituted a default under Fed. R. Civ. P. 55(a) or otherwise, that argument is rejected.  The Court's order permitted the parties to file motions "seeking default or other

to issue an array of sanctions against parties who fail to obey a pretrial court order. The sanctions permitted for a violation of a pretrial court order are set out in Fed. R. Civ. P. 37 (b)(2)(A)(ii)-(vii). The more severe of those sanctions are dismissal or default judgment.

Pursuant to Rule 16(f), "[t]rial courts have broad authority to manage their dockets, including the ability to sanction attorneys or to dismiss cases for counsel's failure to comply with pre-trial orders." Crossman v. Raytheon Long Term Disability Plan, 316 F.3d 36, 38 (1st Cir. 2002). Nonetheless, "the district court's power to discipline is not without limit." Id. at 38. Courts recognize that dismissal, a penalty comparable in its severity to default judgment, is a "harsh penalty." Id. at 39. It is typically only the repeated and willful violation of court orders that justifies such sanction. See Sec. & Exchange Comm'n v. Interinvest Corp., Inc., No. 15-cv-12350-MLW, 2015 WL 7428540, at *2 (D. Mass. Nov. 18, 2015) (citing Mulero-Abreu v. Puerto Rico, 675 F.3d 88, 89 (1st Cir. 2012) and Damiani v. Rhode Island Hospital, 704 F.2d 12, 16 (1st Cir. 1983)). "A single instance of prohibited conduct cannot be a basis for dismissal if the conduct was not 'particularly egregious or extreme.'" Crossman, 316 F.3d at 39 (quoting Top Entertainment, Inc. v. Ortega, 285 F.3d 115, 118 (1st Cir. 2002)). Moreover, mitigating explanations for the party's noncompliance is a factor that counsels against such penalty. See AngioDynamics, Inc., 780 F.3d at 435.

On April 14, 2015, Mark Bodner, original counsel for CRGE, filed a motion to withdraw appearance as counsel. D. 94. The Court granted the motion to withdraw and instructed CRGE to obtain successor counsel and/or file a status report with the Court regarding its efforts by July 20, 2015. D. 105. The Court instructed that if CRGE failed to comply with its order "the other

appropriate relief" if CRGE did not obtain counsel in a timely fashion. D. 105. The order neither rendered the entry of default automatic in the case of non-compliance nor passed any judgment on whether such motion, if sought, would be granted.

parties may file motions seeking default or other appropriate relief." Id. at 4.  The deadline passed without CRGE filing a status report with the Court.  On July 29, 2015, Hayes filed a motion for default judgment.  D. 111.

Although the Court does not condone CRGE's failure to update the Court on the status of its counsel as ordered, CRGE's misconduct, under circumstances here, does not meet the high standard for a default judgment.  CRGE asserts that the deadline from the Court's order was not entered on its office calendar due to the inadvertence.  D. 116 at 2.  CRGE further explains that at the time it was adjusting to the unexpected insolvency of its insurer and adapting to managing its own litigation defense.  Id.  Simultaneously, CRGE was managing the closing of several Toby Keith's restaurants in other states.  Id. at 2-3.  Finally, CRGE explains that its vice president, Gregory McClure, was preoccupied at the time with the serious family illnesses.  Id.

These circumstances, collectively, counsel against entry of default, see, e.g., Companion Health Servs., Inc., 675 F.3d at 85 (holding that default sanction was improper where the defendants' single instance of misconduct occurred while they were unrepresented and unaware of the deadline) as does the fact that Hayes' motion for default judgment rests exclusively upon CRGE's single instance of failing to comply with the Court's order.  See, e.g., Crossman, 316 F.3d at 39 (reversing dismissal that was based exclusively upon a single instance in which counsel inadvertently failed to appear at an initial scheduling conference); cf. AngioDynamics, Inc., 780 F.3d at 435 (affirming entry of default judgment where the "[d]efendants' conduct . . . was severe, repeated, and deliberate, with no legitimate or mitigating explanation for noncompliance").  Furthermore, Hayes has not alleged any specific way in which she has been prejudiced by CRGE's delay.  CRGE has now re-engaged counsel and is prepared to proceed

with the litigation, as evidenced by the various motions and oppositions it has now filed.  D. 116 at 1.  For all of these reasons, the Court denies Hayes' motion for entry of default judgment.

### B.     Hayes' Motion to Attach CRGE's Property Is Denied

#### 1.     Burden of Proof

Hayes seeks to attach CRGE's property in the amount of one million dollars.  D. 150. The parties agree that the attachment of real property is governed by state law, specifically Mass. R. Civ. P. 4.1.  D. 150 at 2; D. 152 at 2.  A prejudgment attachment "authoriz[es] the seizure of the real and personal property of the defendant to be held as security for any judgment the plaintiff may recover in the action."  Mullane v. Chambers, 333 F.3d 322, 329 (1st Cir. 2003).  A plaintiff seeking prejudgment attachment must demonstrate (1) a reasonable likelihood of success on the merits and (2) a reasonable likelihood of recovering judgment equal to or greater than the amount of the attachment sought over and above any liability insurance shown by defendant to be available to satisfy judgment.  Mass. R. Civ. P. 4.1; see Int'l Ass'n of Bridge, Structural & Ornamental Iron Workers, Shopmen's Local Union 501 v. Burtman Iron Works, Inc., 164 F.R.D. 305, 306 (D. Mass. 1995).  Thus, courts consider whether the moving party is "likely to prevail on the merits and obtain damages in the necessary amount."  Nat'l Ass'n of Gov't Emp., Inc. v. Nat'l Emergency Med. Servs. Ass'n, Inc., 13-cv-10854-JLT, 2013 WL 3563528, at *3 (D. Mass. July 10, 2013) (internal quotation marks omitted) (citing Aetna Cas. & Sur. Co. v. Rodco Autobody, 138 F.R.D. 328, 332 (D. Mass. 1991)).  The burden belongs to the moving party, who "must set forth with specificity the underlying facts in support of the attachment."  Aetna, 138 F.R.D. at 340.

To prevail on her negligence claim, Hayes must prove that CRGE owed Hayes a duty of care, that CRGE breached its duty and that the breach caused Hayes to suffer injury.  See Jupin

v. Kask, 447 Mass. 141, 146 (2006).  To prevail on her Mass. Gen. L. c. 143 § 51 strict liability

claim, Hayes must establish that her alleged injury was caused by building conditions that

violated the provisions of Mass. Gen. L. c. 143, § 51 and the Massachusetts State Building Code.

See Sheehan v. Weaver, 467 Mass. 734, 735 (2014).  As Hayes' Mass. Gen. L. c. 93A claim is

based upon a violation of Mass. Gen. L. c. 143 § 51, it requires the same showing.  In light of

these standards, the record does not demonstrate that Hayes has a reasonable likelihood of

success sufficient to warrant attachment, particularly where significant factual disputes remain as

to whether a defect in the stairs contributed to Hayes' fall and which conditions contributed to

her fall.

### 2.    The Factual Dispute as to How Hayes Fell Precludes Attachment

Hayes alleges that a defect in the stairs at Toby Keith's caused her fall.

D. 1 ¶¶ 34-35, 46-48.  Hayes points to her expert reports to support her assertion that her fall was

the result of CRGE's negligence and failure to comply with Mass. Gen. L c. 143 § 151.[5]

Id. ¶¶ 16-17.  Specifically, Hayes' expert architect, David Cowen ("Cowen"), opines that "[t]he

edges of the stair treads were not reasonably conspicuous" and "[t]he stair had an excessive

variation in riser height between the top riser and the next riser down." D. 112-5 at 7.  Hayes'

expert reports, however, fail to overcome the central factual dispute in this litigation:  how Hayes

fell and the cause of the fall.  Deposition testimony reveals contradictory accounts of Hayes' fall.

According to Hayes, on the night of March 31, 2012, as she was leaving the second floor

of Toby Keith's, she secured her right hand to the handrail on the right side of the stairs while

she was still on the stairway platform above the first step of the stairs.  D. 112 at 5.  She was

carrying a box of dinner leftovers in her left hand.  Id.  She testified at deposition that she placed

---

[5] Hayes' motion for attachment relies upon briefing she submitted with her request for default judgment.  D. 150 at 4.

her right foot on the first stair.  Id. at 5-6.  She further testified that when she attempted to place her left foot on a second step, with her right hand still secured to the right side handrail, she fell forward, front first and landed at the base of the stairway directly on her left hip area.  Id. at 6.  According to Hayes, she did not trip on anything and her knee did not buckle.  Id. at 7.

CRGE denies that any alleged defect in the stairs caused Hayes to fall.  D. 116 at 5.  In addition to contending that Hayes' account of her fall has been inconsistent, D. 152 at 7, CRGE stresses that the sole eyewitness to the fall, Hayes' dinner companion, John Williams ("Williams"), offered deposition testimony that contradicts Hayes' account.  Williams testified that he was standing about two or three feet behind Hayes at the time she fell.  D. 112-12 at 24, 27.  According to Williams, Hayes was on the left hand side of the middle railing as Hayes was "c[oming] down" the stairs.  Id. at 24-25.  Williams denied that Hayes had taken any steps from the top landing before she fell.  Id. at 26.  Instead, according to Williams, it looked like Hayes "didn't realize the steps were there" and "just went down."  Id.  He testified "I think she realized a split second too late that there were stairs."  Id. at 27.  Williams also testified that "[w]hen [Hayes'] foot went, she tried to grab the railing, and that's when she tumbled."  Id. at 26.  According to Williams, Hayes "went right from the top landing down to the bottom."  Id.  Williams testified that Hayes reached out for the middle railing but was never able to grab it.  Id. at 25.  Williams further testified that Hayes landed on her right side.  Id. at 29.  Finally, Williams testified that once Hayes had fallen Williams "ran" down the stairs without difficulty to assist her.  Id. at 29-30.  Given the differences between Hayes' and Williams' recollections, there exists a factual dispute as to the manner in which Hayes fell, the cause of the fall and if the step Hayes characterizes as defective contributed to her fall.

While Hayes' experts conclude that a defect in the stairs and low lighting caused Hayes' fall and injuries, they do so relying largely upon her account of her fall.  See, e.g., D. 112-5 at 3-5; D. 112-6 at 8.  In addition, Sterling's expert and Baldinger's expert directly challenge the conclusions of Hayes' experts on technical grounds.  D. 152 at 7; D. 152-1 at 4; D. 152-2 at 17. For all of these reasons, the Court does not conclude that Hayes is reasonably likely to succeed in proving that a defect in the stairs caused her fall.

### 3.    The Factual Dispute as to the Level of Lighting at the Time of Hayes' Fall Precludes Attachment

Hayes also alleges that low lighting contributed to her fall.  D. 1 ¶ 34-35.  Conflicting testimony, however, precludes the Court from concluding that Hayes is likely to succeed on her negligence, strict liability and Mass. Gen. L. c. 93A claims on the basis of this claim.  Hayes' companions at Toby Keith's and two employees of Toby Keith's offered conflicting testimony as to the level of lighting at the time Hayes attempted to walk down the stairs.

Hayes contends that it was dark in Toby Keith's at the time of her fall and she was unable to see the second step when she put her left foot down.  D. 112 at 7.  Other witnesses, however, contradicted Hayes' testimony.   Richard D'Amato, another of Hayes' dinner companions, testified that he had no problem seeing the steps of the stairs as he walked down the stairs.  D. 112-10 at 34.  Jean D'Amato testified at deposition that she did not "recall being alarmed like oh, I can't see the stairs to step down," D. 112-11 at 25, and that she assumed she had been able to see the stairs at the time.  Id. at 37.  Williams described the lights as "dimmed."  D. 112-12 at 19. He stated that he "probably did see [the stairs]."  Id. at 27.  Thus, there is an open question as to the level of lighting at the time of Hayes' fall.

Moreover, Toby Keith's employees, Jennifer Nicholson and Adam Miller, testified that at 9:30 p.m. every night the lights at Toby Keith's were turned to their lowest level to set a certain

atmosphere for band performances.  D. 112-14 at 26; D. 112-15 at 15-16.  The precise time at which Hayes fell is unclear.  D. 112-7 at 3 (describing the time Hayes was leaving Toby Keith's as "approximately 9:30").  Thus, CRGE asserts that even if Hayes' expert, Cowen, is correct that the lighting was at "0.2 foot candles" during Cowen's inspection, "0.2 foot candles" would have been a lawful lighting level at the time of Hayes' fall because that time period fell within the Massachusetts State Building Code's exception for light levels during a performance. D. 112-12 at 19 (Williams testifying that the band had just come on at the time he, Hayes and their other companions were leaving Toby Keith's); D. 152 at 8.  Therefore, the record does not foreclose the possibility that, even if the lights were dimmed, such dimming was compliant with the applicable code.

Hayes' experts' conclusions regarding the lighting at Toby Keith's do not resolve these factual disputes because they rely, in large part, upon Hayes' allegations.  Cowen opines that "[t]he dim lighting on the stairs made accurate identification of the stairs more difficult . . . [and] [t]he failure to provide a minimal level of lighting to make the tread edges reliably identifiable was a cause of Ms. Hayes' loss of balance, fall and injury."  D. 112-5 at 8-9.  Cowen's opinion regarding the lighting, however, is based upon the conditions he found during an inspection of Toby Keith's on a different day from the day of Hayes' fall.  Id. at 8.  To that point, Baldinger's expert, Clark Griffith, "questions if the actual light level on the stair at the time of the fall can be determined with any reasonable or quantifiable degree of certainty" and asserts that "[l]ight level measurements obtained after a substantial amount of time and a number of events, even with Mrs. Hayes present, yield no quantifiable means of verifying that the light level recreated, matched the illumination at the time of the incident."  D. 152-2 at 13.

Taken together, these factual disputes as to how Hayes fell, whether any alleged defect in the stairs contributed to Hayes' fall and the level of lighting at the time of Hayes' fall preclude the Court from concluding that there is a reasonable likelihood that Hayes will prevail on the merits.  See, e.g., Braintree Labs., Inc. v. Citigroup Glob. Mkts., Inc., 671 F. Supp. 2d 202, 208 (D. Mass. 2009) (declining to grant an attachment where deposition testimony was insufficient to overcome contradictory sources in the record on the question of which corporate entities lacked knowledge of the alleged untruths or omissions), aff'd in part, appeal dismissed in part, 622 F.3d 36 (1st Cir. 2010); Coccoli v. Daprato, 13-cv-12757-MBB, 2014 WL 1908934, at *9 (D. Mass. May 12, 2014) (denying motion to attach where "[t]he record include[d] disputed chains of title" in a suit concerning property tax payments); Sheehan v. Netversant-New England, Inc., 345 F. Supp. 2d 130, 132 (D. Mass. 2004) (denying motion for attachment where defenses were "at least facially meritorious"); cf. Guevara-Salgado v. Hayes-Meninno, LLC, 15-cv-12294-PBS, 2015 WL 5104986, at *6 (D. Mass. Aug. 31, 2015) (allowing attachment where liability was conceded).  Accordingly, the Court denies the motion to attach CRGE's property.

**C.     CRGE's Motion to Amend Its Third Party Complaint Is Denied in Part and Allowed in Part**

**1.     CRGE's Proposed Amendment**

In its motion to amend, CRGE seeks to add third-party beneficiary claims against Lampasona, Sterling and Baldinger.  D. 133.  Specifically, in its proposed amended pleading, CRGE alleges that it was an intended beneficiary of (1) the contract between Lampasona and Sterling through which Lampasona's responsibilities as a subcontractor for the construction of Toby Keith's were set out; (2) the contract between Capri and Sterling through which Sterling's duties and obligations as the general contractor for the construction of Toby Keith's were set out; and (3) the contract between Capri and Baldinger through which Baldinger's duties and

obligations as the architect for the construction of Toby Keith's were set out.  D. 135 ¶¶ 8, 10, 13.

### 2.    Burden of Proof

Under Fed. R. Civ. P. 15(a), leave to amend prior to trial will be freely given when justice so requires.  "The decision to allow or deny a motion to amend is within the discretion of the district court."  Momenta Pharm., Inc. v. Amphastar Pharm., Inc., No. 11-cv-11681-NMG, 2014 WL 298035, at *2 (D. Mass. Jan. 24, 2014) (citing Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321, 330 (1971)).  "Nevertheless, leave ought to be given unless there is a good reason to deny it."  Id.  Courts typically permit amendments "in the absence of any apparent or declared reason such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, [or] futility of the amendment."  Resnick v. Copyright Clearance Ctr., Inc., 422 F. Supp. 2d 252, 256 (D. Mass. 2006) (alteration in original) (internal quotation marks and citations omitted).  In deciding a motion to amend, it is routine to "focus . . . on the prejudice to the non-moving party."  See Klunder v. Brown Univ., 778 F.3d 24, 34 (1st Cir. 2015).

### 3.    Sterling and Baldinger Have Failed to Demonstrate that Allowance of CRGE's Proposed Amendment Would Impose Undue Prejudice

The third-party beneficiary claims CRGE seeks to add rely upon the same allegations present in the original third-party complaint.  Compare D. 11 with D. 135.  CRGE maintains its allegations that Sterling and Baldinger had the duty to ensure that the stairs in Toby Keith's were constructed in compliance with all applicable codes and that their failure to satisfy that duty renders them liable for Hayes' fall.  Compare D. 11 ¶¶ 11, 12, 14, with D. 135 ¶¶ 11, 12, 14.  In its proposed amendment, CRGE still asserts the same fundamental claims – contribution and breach of contract – against Sterling and Baldinger as CRGE asserted in its original third party

complaint.  Id.  The only difference, then, is the nature of CRGE's alleged relationship to the contracts that governed the construction of Toby Keith's.

Sterling and Baldinger are not prejudiced by the amendment.  Sterling and Baldinger cannot claim surprise as their motions for summary judgment anticipated a third-party beneficiary claim.  D. 119 at 6; D. 121 at 10.  The issue of CRGE's relationship to these contracts was raised and explored during discovery.  See, e.g., D. 134-1 at 6-8, 22-26.  CRGE has represented that the discovery needed to support its third-party beneficiary claims has been completed and CRGE makes no request for further discovery.  D. 134 at 6.  Sterling and Baldinger have not pointed to any particular avenue of discovery that they would have pursued had the proposed third-party beneficiary status been a part of the original third-party complaint.  Indeed, neither Sterling nor Baldinger has pointed to any specific prejudice it will suffer as a result of CRGE's proposed amendment.

Contrary to Baldinger and Sterling's arguments, the passage of time between the filing of CRGE's third party complaint and CRGE's pending request to amend is not dispositive.  In assessing delay, "[e]ach case . . . turn[s] on its own circumstances."  ACA Fin. Guar. Corp. v. Advest, Inc., 512 F.3d 46, 57 (1st Cir. 2008).  The import of delay is measured at least in part based upon the prejudice that amendment would impose.  See, e.g., Cooper v. Charter Commc'ns Entm'ts I, LLC, No. 12-cv-10530-KAR, 2015 WL 1943858, at *3 (D. Mass. Apr. 28, 2015) (internal quotation marks and citations omitted) (explaining that "[i]n determining whether the plaintiffs unduly delayed in filing their motion to amend, the focus . . . is on whether allowing the amendment would unfairly prejudice the defendants").  Since Sterling and Baldinger have failed to point to any specific prejudice caused by the delay, the delay here does not require this Court to deny CRGE's proposed amendment.

In addition, while the hardships CRGE (e.g., the insolvency of its insurer) has experienced do not excuse CRGE from complying with procedural rules, such circumstances distinguish this suit from "a situation in which the delay in moving to amend can be attributed to the plaintiffs willfully allowing their case 'to lie fallow.'"  Guest-Tek Interactive Entm't Inc. v. Pullen, 731 F. Supp. 2d 80, 93 (D. Mass. 2010) (quoting Hayes v. New England Millwork Distribs., Inc., 602 F.2d 15, 20 (1st Cir. 1979)).   Here, the lack of a "dilatory motive" on the part of CRGE diminishes the weight of the delay.  See id.

Because Sterling relies exclusively upon undue delay without any showing of prejudice in opposing CRGE's motion to amend, CRGE's motion to add a third party beneficiary claim against Sterling is ALLOWED.  See, e.g., Tatarian v. Oneida Ltd., No. 83-cv-3075-MLW, 1986 WL 6528, at *1 (D. Mass. Jan. 14, 1986) (allowing amendment because "even if [the party moving for amendment] did unduly delay in adding this counterclaim, [the party opposing amendment] has asserted no prejudice that he will suffer as a result"); Klunder, 778 F.3d at 35 (affirming lower court's decision to allow amendment because the opposing party failed to establish prejudice).

### 4.      CRGE's Proposed Amendment Is Futile as against Baldinger

CRGE's motion to amend the third-party complaint against Baldinger, however, is DENIED for a different reason, namely futility.  "Futility constitutes an adequate basis to deny a proposed amendment."  Savoy v. White, 139 F.R.D. 265, 267 (D. Mass. 1991) (quoting Demars v. Gen. Dynamics Corp., 779 F.2d 95, 99 (1st Cir. 1985)).  Thus, if Baldinger can demonstrate that the third party beneficiary claim that CRGE seeks to introduce does not state a claim to relief that is plausible on its face, CRGE's proposed amendment is futile and must be denied. See, e.g., Hatch v. Dep't for Children, Youth & Their Families, 274 F.3d 12, 26 (1st Cir. 2001)

(affirming lower court's decision to deny motion for leave to amend where the proposed claim was futile); Jones v. Experian Info. Sols., Inc., No. 14-cv-10218-GAO, 2015 WL 6509117, at *3 (D. Mass. Oct. 27, 2015) (denying leave to amend after concluding that amendment was futile).

CRGE's proposed third-party beneficiary claim against Baldinger is futile because Baldinger's contract with Capri explicitly precludes third-party beneficiary claims. D. 144 at 3-5.  To prevail on a third-party beneficiary claim, a party must show that the two contracting parties intended to give the third party the benefit of the contract.  See Anderson v. Fox Hill Vill. Homeowners Corp., 424 Mass. 365, 366 (1997).  The Court looks to "the language and circumstances of the contract for indicia of intention."  Id.  That "intent must be clear and definite."  Id. at 366-367.  The contract between Baldinger and Capri specifically bars any third-party beneficiary rights or claims.  The contract provides  that "[n]othing contained in this Agreement shall create a contractual relationship with or a cause of action in favor of a third party against either the Architect or Owner."  D. 122-4 at 5.  Because that language clearly disavows third party claims, CRGE's proposed amendment to add a third party beneficiary claim is futile.  Accordingly, the Court denies the proposed amendment against Baldinger.  See, e.g., McKensi v. Bank of Am., N.A., No. 09-cv-11940-JGD, 2010 WL 3781841, at *6 (D. Mass. Sept. 22, 2010) (denying motion to amend to add a third party beneficiary claim where the claim was futile); CUMIS Ins. Soc., Inc. v. BJ's Wholesale Club, Inc., No. 05-cv-1158-JGD, 2005 WL 6075375, at *2 (Mass. Super. Ct. Dec. 7, 2005) (allowing motion to dismiss where "the parties expressly stated in the contract at issue their intent to preclude any third-party beneficiary claims"), aff'd sub nom. Cumis Ins. Soc'y, Inc. v. BJ's Wholesale Club, Inc., 455 Mass. 458 (2009).

For these reasons, CRGE's motion to amend is ALLOWED in so far as it seeks to add a

third- party beneficiary claim against Sterling and DENIED in so far as it seeks to add a third-party beneficiary claim against Baldinger.   As CRGE's request to add third-party beneficiary claims against Lampasona is unopposed and the Court's conclusions regarding the lack of undue prejudice apply, the Court ALLOWS CRGE to amend to assert those claims against Lampasona.

### D.      Sterling's Motion for Summary Judgment against CRGE Is Denied

Sterling moves for summary judgment on CRGE's breach of contract claim.  D. 119.  As the Court has allowed CRGE to pursue its third-party beneficiary claim against Sterling, the Court now assesses this claim.[6]  As noted, to prevail on a third-party beneficiary claim, a party must show that the two contracting parties intended to give the third party the benefit of the promised performance.  See Anderson, 424 Mass. at 366.   "[A] beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and either (a) the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary; or (b) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance."  Shuras v. Integrated Project Servs., Inc., 190 F. Supp. 2d 194, 203 (D. Mass. 2002) (quoting Restatement (Second) of Contracts § 302 (1981)).  The Court looks to "the language and circumstances of the contract for indicia of intention" to grant third party beneficiary rights.  Anderson, 424 Mass. at 366 (internal citations omitted).   That "intent must be clear and definite."   Id. at 366-367 (internal citations omitted).

Genuine issues of material fact remain regarding whether the language in the contract between Sterling and Capri granted a third party beneficiary right to CRGE.  It is undisputed that

---

[6]  To the extent that CRGE sought to bring a breach of contract claim based upon a theory that CRGE was a direct party to a contract with Sterling, that theory fails.  CRGE has conceded that there was no such contract between CRGE and Sterling.  D. 146 at 4.

Sterling and Capri entered into a contract related to the construction of Toby Keith's. Sterling acknowledges that there was at least "for a period of time" a contract between Capri and Sterling. D. 139 ¶ 13. It is also undisputed that a version of the contract between Sterling and Capri has been produced. D. 127-5. Sterling, however, contends that the version of the contract that has been produced is not executed and is an unfinished draft. D. 139 ¶¶ 7, 9, 11, 13, 19. Mark Bolitho, president of Sterling, was unable to confirm during his deposition that the version the parties rely upon is in fact the contract between Capri and Sterling because "[his] signature [was] not on it," "[he] [did not] know if it[] [had] been modified from the original agreement" and "there were several iterations before [Sterling and Capri] came to an agreement." D. 141-2 at 6, 31. Asked if a final version of the contract was ever executed, Bolitho responded, "I can only assume it was, I don't know for sure." Id. at 6. Gregory McClure, on CRGE's behalf, similarly testified that the version the parties point to as the contract between Capri and Sterling is not signed and "so [he could not] validate whether [it was] the actual contract or not." D. 141-5 at 22.

Sterling thus concludes that the final contract between Sterling and Capri is an oral agreement. D. 139 ¶¶ 9, 11, 13, 19. For its part, CRGE urges the Court to rely upon the version of the contract that has been produced but characterizes it as "likely" the final contract. D. 146 at 5. Given these contentions, there exists a factual dispute as to the content and terms of the final contract between Capri and Sterling.

Without a finalized contract to review, the Court is unable to determine whether the contractual language evidences an intent to create a third-party beneficiary claim. Where the contract itself is in dispute, the question of "[w]hether [CRGE] may maintain a third party beneficiary contract claim based on a purported agreement between [Sterling] and [Capri] cannot

be addressed in the abstract." Bennett v. Massachusetts Bay Transp. Auth., No. 93-cv-1409 ESG, 1998 WL 52245, at *6 (Mass. Super. Ct. Feb. 2, 1998) (declining to dismiss third party beneficiary claim where "[t]he agreement [was] not contained in this record" and its existence was contested).  "Resolution of this issue requires interpretation of the provisions of the agreement itself, if any." Id. The Court is unable to perform the requisite contractual interpretation here.  Thus, the Court cannot conclude as a matter of law that the contract language or even its terms more generally (if it is an oral contract) bar a third-party beneficiary claim. See, e.g., Hudson v. Dubois, 50 Mass. App. Ct. 1114 (2001) (denying summary judgment on third party beneficiary claim where defendant "failed to include a copy of the entire contract").

There also exist genuine issues of material fact as to whether the circumstances of the contract indicate an intent to assign third-party beneficiary rights to CRGE.  Because the terms of the contract do not clearly resolve third party beneficiary status, the circumstances surrounding the contract are properly considered.  See Markle v. HSBC Mortg. Corp. (USA), 844 F. Supp. 2d 172, 181 (D. Mass. 2011); Chestnut Hill Dev. Corp. v. Otis Elevator Co., 653 F. Supp. 927, 931 (D. Mass. 1987) (explaining that "[a] court is . . . permitted to consider all the relevant circumstances surrounding the transaction" if discrepancies in the contract language "raise[] ambiguities regarding the parties intent as to third party beneficiary rights").  CRGE has presented factual allegations that plausibly suggest that CRGE, as owner of the facility that was being constructed pursuant to the contract between Sterling and Capri, was a third party beneficiary to that contract.  According to CRGE, (1) there was a management contract between CRGE and Capri (2) Capri generally entered into contracts for the benefit of CRGE and (3) CRGE directly paid for at least some of the payments owed to Sterling under the contract

between Capri and Sterling.  D. 134-1 at 6-7, 27; D. 146-1 at 23-24.  CRGE further notes that Capri had engaged Sterling to construct several Toby Keith's in various locations.  D. 146-2 at 4. Sterling disputes that it had knowledge that its services were benefiting CRGE; Sterling points to the testimony of its president, Bolitho, that he did not know that "[Sterling's] services as a general contractor were benefiting [CRGE]."  D. 119 at 7-8, 86.

Taken together, these assertions create genuine issues of material fact as to whether the circumstances surrounding the formation of a contract support the third-party beneficiary claim. These issues of material fact preclude summary judgment.  See, e.g., Foote-Smith v. Keen Dev. Corp., No. 99-cv-1792-RWZ, 2001 WL 747650, at *2 (Mass. Super. Ct. Mar. 19, 2001) (denying summary judgment on third party beneficiary claim where "the record reveal[ed] a material dispute about the intent of the parties to confer a benefit upon [the third party]"); Chestnut Hill Dev. Corp., 653 F. Supp. at 931 (denying summary judgment on third party beneficiary claim where "[t]he relevant circumstances . . . raise factual questions as to whether the parties intended [the third party] to be a third party beneficiary").  For these reasons, Sterling's motion for summary judgment on CRGE's breach of contract claim is denied.

### E.    Baldinger's Motion for Summary Judgment against CRGE Is Allowed in Part and Denied in Part

Baldinger moves for summary judgment on CRGE's breach of contract and contribution claims against Baldinger.  D. 120.  Both CRGE and Sterling oppose the motion.  D. 140; D. 147.

#### 1.    CRGE's Breach of Contract Claim

Under Massachusetts law, a plaintiff asserting a breach of contract claim must demonstrate that:  (1) the parties entered into a valid contract (2) the plaintiff was ready, willing, and able to satisfy its obligations under the contract (3) the defendant breached the contract and (4) the plaintiff sustained damages as a result of that breach.  Children's Hosp. Corp. v. George

Washington Univ., 750 F. Supp. 2d 239, 245 (D. Mass. 2010).  CRGE's breach of contract claim

fails because, as CRGE now concedes, CRGE did not have a contract with Baldinger.  D. 147 at

7.  In its opposition, CRGE does not argue that it had a contract with Baldinger; instead, CRGE

asserts that its breach of contract claim arises from its status as a third party beneficiary of the

contract between Baldinger and Capri.  Id.  As the Court has already concluded, CRGE cannot

claim third-party beneficiary status on the contract between Baldinger and Capri because that

contract expressly bars any such third-party beneficiary claims.  D. 122-4 at 5.  Therefore,

summary judgment is granted on CRGE's breach of contract claim against Baldinger.

### 2.      CRGE's Contribution Claim

A contribution claim is "based on the shared fault of the joint tortfeasors."  Elias v.

Unisys Corp., 410 Mass. 479, 482 (1991).  Where a third party's negligence is independent of a

defendant's negligence, the defendant is entitled to contribution from the third party.  See Econ.

Eng'g Co. v. Com., 413 Mass. 791, 793 (1992).  The party against whom contribution is sought

must itself have "cause[d] another, by reason of [its] wrongdoing, to incur injury or damage."

See Elias, 410 Mass. at 482.  "[T]o state a claim for contribution from a joint tort-feasor, the

party seeking contribution must show that the potential contributor is directly liable to the tort

plaintiff."  Panagakos v. Walsh, 434 Mass. 353, 354-355 (2001).  Thus, the question is whether

the plaintiff's claim would be viable if brought directly against the potential contributor.  See id.

Baldinger's potential negligence related to its duties arising under the Construction

Control Affidavit precludes summary judgment on CRGE's contribution claim.  On May 7,

2010, Ilan Baldinger, owner of Baldinger, executed a Construction Control Affidavit, binding

Baldinger to, inter alia, ensure that the construction of Toby Keith's met "the applicable

provisions of the Massachusetts Building Code;" to "be present on the construction site on a

regular and periodic basis to determine that the work [was] proceeding in accordance with the documents approved for the building permit"; and to "become generally familiar with the progress and quality of work and to determine, in general, if the work [was] being performed in a manner consistent with the construction documents." D. 141-4 at 9-10; D. 148-1 at 1. Baldinger promised to "submit periodically a progress report . . . to the Town of Foxborough Building Commissioner." Id. On May 4, 2011, Baldinger filed a Construction Completion Notice with the Town of Foxborough Building Department, attesting to the fact that Baldinger had "performed the necessary professional services" and "been present on the construction site to determine that the work ha[d] been completed in accordance." D. 148-2. Although Ilan Baldinger acknowledged during deposition that he had "filled out" the Construction Control Affidavit, he conceded that (1) Baldinger did not send a representative to visit the construction site regularly and (2) Baldinger did not submit the requisite progress reports. D. 141-4 at 9-10.

Baldinger's responsibilities under the Construction Control Affidavit gave rise to a duty of care to certain third parties. "[A] defendant under a contractual obligation is liable to third persons not parties to the contract who are foreseeably exposed to danger and injured as a result of its negligent failure to carry out that obligation." LeBlanc v. Logan Hilton Joint Venture, 463 Mass. 316, 328 (2012) (alteration in original) (internal quotation marks omitted) (quoting Parent v. Stone & Webster Eng'g Corp., 408 Mass. 108, 114 (1990)). "Liability will be imposed, however, only if it is foreseeable that the defendant's work, if negligently performed, may cause harm to third parties." Trotman v. Massachusetts Bay Transp. Auth., No. 09-cv-04649-TAC, 2014 WL 1758103, at *2 (Mass. Super. Ct. Mar. 3, 2014) (citing McDonough v. Whalen, 365 Mass. 506, 512 (1974)).

In executing the Construction Control Affidavit, Baldinger assumed independent duties to inspect the construction site and report on the status of the construction.  Negligent performance of those duties can, as a matter of law, render Baldinger liable for foreseeable harm to third parties.  LeBlanc v. Logan Hilton Joint Venture is particularly instructive.  LeBlanc, 463 Mass. at 331.  The plaintiff in LeBlanc brought suit against various parties involved in the construction of the hotel at which her husband had been fatally electrocuted.  Id. at 317.  During the construction process, the architect-defendant, like Baldinger here, had contractually assumed a duty to, *inter alia*, "visit the [hotel construction] site at appropriate intervals to become familiar with the progress and quality of the work," submit biweekly reports of its observations and notify the hotel of any deficiencies in the work.  Id. at 328.  The Supreme Judicial Court rejected the lower court's conclusion that, despite these reporting obligations, the architect could not be found liable because it did not control the contractors.  Id. at 322-323.  The Supreme Judicial Court concluded that the architect's negligent performance of its supervision and reporting obligations served as an independent basis for liability.  Id. at 331.  Baldinger is in a similar position as the architect in LeBlanc.  Thus, the reasoning of LeBlanc applies.

Here, a reasonable jury could find that (1) Baldinger negligently performed its responsibilities under the Construction Control Affidavit (2) the danger created was foreseeable and (3) Hayes' alleged injury was the result of Baldinger's negligence.  Should a jury find in the affirmative on each of those points, Baldinger's breach of the Construction Control Affidavit would constitute an independent basis for Baldinger to be directly liable for Hayes' alleged injury.  Thus, there exists a genuine issue of material fact as to whether CRGE is entitled to contribution from Baldinger.

Baldinger's alternative argument that it is entitled to summary judgment because there is no expert testimony criticizing Baldinger is unpersuasive, given the particular facts here. Baldinger contends CRGE must proffer expert testimony to establish that if Baldinger had conducted a site visit it would have discovered the alleged defect in the stairs. D. 121 at 9. The Court recognizes that generally expert testimony is required to establish the professional standard of care for an architect. See Enrich v. Windmere Corp., 416 Mass. 83, 88-89 (1993). There is, however, an exception. See LeBlanc, 463 Mass. at 329. Where "the malpractice 'is so gross or obvious that laymen can rely on their common knowledge to recognize or infer negligence'" expert testimony is not required. Id.

Even if this exception does not apply here, expert testimony is not required per se to determine whether Baldinger was negligent in certifying that there were no building code violations when it was alleged that there were such violations and it is further alleged that Baldinger did not visit the site and remain familiar with the construction as required. D. 147 at 6. These questions "involve[] a commonsense determination regarding the understanding of an ordinary, reasonably prudent person, a determination properly left to the jury without expert testimony." Cottam v. CVS Pharmacy, 436 Mass. 316, 326 (2002); see, e.g., doCanto v. Ametek, Inc., 367 Mass. 776, 782 (1975) (explaining that the jury was permitted to conclude, without expert testimony, that "[the defendant] never advised [the employer of the injured plaintiff] of this particular danger").

Moreover, this is not a circumstance in which no expert testimony is being offered. D. 112-5 at 3-5; D. 112-6 at 8. Hayes' experts proffer opinions regarding alleged defects in the stairs and the cause of Hayes' fall. Id. Relying upon, *inter alia*, the testimony of Hayes' experts to determine whether there was a defect in the stairs, the jury can then evaluate causation.

"[T]his is not a case where the cause of the plaintiff's [injury] must be said to be conjectural."

D'Entremont v. Boston Consol. Gas Co., 320 Mass. 582, 584 (1947) (allowing jury to resolve

liability without expert testimony). The jury has the tools to independently assess causation

based upon this record. See e.g., LeBlanc, 463 Mass. at 330-331 (holding that the evidence on

the record combined with the obviousness of the risk was sufficient to allow a jury to determine

liability despite the absence of expert testimony); Petchel v. Collins, 59 Mass. App. Ct. 517, 522-

523 (2003) (concluding that expert testimony was not required to establish causation between the

presence of propane and plaintiff's injuries where the record and the jury's common knowledge

permitted the jury to draw reasonable inferences). For all of these reasons, Baldinger's motion

for summary judgment as to CRGE's contribution claim is denied.

### F.    Baldinger's Partial Motion for Summary Judgment against Sterling Is Denied

Baldinger moves for partial summary judgment on its contractual indemnification against

Sterling. D. 125. Baldinger contends that Sterling is contractually obligated to indemnify it on

the contribution and breach of contract claims CRGE asserts against Baldinger.

D. 126 at 6. Baldinger rests its purported claim for indemnification upon a clause in the contract

between Sterling and Capri.

Under Massachusetts law, where material facts are not in dispute, interpretation of an

indemnity clause is an issue of law. Caldwell Tanks, Inc. v. Haley & Ward, Inc., 471 F.3d 210,

215 (1st Cir. 2006). Indemnification clauses are "to be interpreted like any other contract, with

attention to language, background, and purpose." Herson v. New Boston Garden Corp., 40

Mass. App. Ct. 779, 782 (1996). Such clauses "are to be fairly and reasonably construed in order

to ascertain the intention of the parties and to effectuate the purpose sought to be accomplished."

Post v. Belmont Country Club, Inc., 60 Mass. App. Ct. 645, 651 (2004) (quoting Shea v. Bay

State Gas Co., 383 Mass. 218, 222 (1981)).   Unambiguous contract language must be "interpret[ed] according to its plain terms."   Bank v. Int'l Bus. Machines Corp., 145 F.3d 420, 424 (1st Cir. 1998) (internal quotation marks and citations omitted).   "If those plain terms unambiguously favor either side, summary judgment is appropriate."   Id.

Sterling contends that summary judgment is improper because there are genuine issues of material fact as to the terms of the contract containing the indemnification clause.  D. 141 at 4. As the Court has discussed, no executed version of the contract between Sterling and Capri has been produced.  Moreover, Sterling and CRGE dispute the enforceability of the draft that has been produced.   D. 127-5; D. 139 ¶¶ 7, 9, 11, 13, 19.   Because Baldinger's claim for indemnification turns upon this disputed contract, summary judgment is improper.  See Lo v. Fed. Home Loan Mortg. Corp., 08-cv-0822, 2011 WL 8008118, at *4 (Mass. Super. Ct. May 29, 2012) (explaining that "the material disputes over the terms of the contract warrant the denial of summary judgment"); see also Staples, Inc. v. Sceppaguercio, No. 01-cv-02641-CJM, 2002 WL 31957012, at *6 (Mass. Super. Ct. Nov. 25, 2002) (denying summary judgment where "there [was] a dispute of fact as to which of the[] two versions of the proposed agreement control[led]"); Advance Me, Inc. v. Catfish Grille, Inc., 2007 Mass. App. Div. 18 (Mass. Dist. Ct. 2007) (denying summary judgment where an affidavit gave rise to a question as to "whether there was a continuing agreement between [the parties]").

Even if the version of Sterling's contract with Capri that the parties are relying upon reflects the contents of the final, executed contract, there still remain genuine issues of material fact concerning the extent of Sterling's obligation to indemnify Baldinger.  In relevant part, the alleged contract states:

> To the fullest extent permitted by law, the Contractor shall indemnify and hold harmless the Owner, Architect, Architect's consultants and agents and employees

of any of them from and against claims, damages, losses and expenses, including but not limited to attorneys' fees, arising out of or resulting from performance of the Work, provided that such claim, damage, loss or expense is attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property (other than the Work itself), but only to the extent caused by the negligent acts or omission of the Contractor, a subcontractor, anyone directly or indirectly employed by them or anyone for whose acts they may be liable, regardless of whether or not such claim, damage, loss or expense is caused in part by a party indemnified hereunder.

D. 127-5 at 9.

The language of the clause limits Sterling's obligation to indemnify to those claims that arise out of Sterling's negligence, Sterling's subcontractor's negligence or the negligence of an employee of Sterling or Sterling's subcontractor. See, e.g., Rush v. Norfolk Elec. Co., 70 Mass. App. Ct. 373, 382 (2007) (interpreting indemnification clause so as to give effect to "language limit[ing] the indemnity obligation to losses caused by such parties' conduct"). If the jury were to find that Baldinger was liable on a basis that did not implicate Sterling, the indemnification clause, by its very terms, would not apply. For all these reasons, Baldinger is not entitled to summary judgment on its indemnification claim against Sterling.

**VI.  Conclusion**

For the foregoing reasons, the Court rules as follows:

    A.  The Court DENIES Hayes' motion for default judgment against CRGE, D. 111;

    B.  The Court DENIES Hayes' motion to attach CRGE's property, D. 150;

    C.  The Court DENIES in part and ALLOWS in part CRGE's motion to amend, D. 133, in the following manner:

        1.  The Court DENIES CRGE's motion to amend its third party complaint in so far as the amendment seeks to add a third party beneficiary claim against Baldinger;  and

    2.   The Court ALLOWS CRGE's motion to amend its third-party complaint in so far as it seeks to add third-party beneficiary claims against Lampasona and Sterling;

D.  The Court DENIES Sterling's motion for summary judgment on CRGE's breach of contract claim (Count III of CRGE's third-party complaint), D. 119;

E.  The Court DENIES in part and ALLOWS in part Baldinger's motions for summary judgment in the following manner:

    1.   The Court ALLOWS Baldinger's motion for summary judgment in so far as it seeks to dismiss CRGE's breach of contract claim (Count V of CRGE's third party complaint), D. 120;

    2.   The Court DENIES Baldinger's motion for summary judgment in so far as it seeks to dismiss CRGE's contribution claim against Baldinger (Count IV of CRGE's third party complaint), D. 120; and

    3.   The Court DENIES Baldinger's motion for partial summary judgment on its indemnification claim against Sterling (Count I of Baldinger's cross claim). D. 125.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge